IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| RALPH KILLORAN, on behalf of himself and all others similarly situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 112-128 |
| CENTURY DEBT CONSOLIDATION, LISA MONTGOMERY, NATIONWIDE SUPPORT SERVICES, and JOANNE A. GARNEAU, | * * * * * | |
| Defendants. | * | |

**O R D E R**

This case is a consumer class action brought on behalf of individuals subjected to Defendants' alleged violation of the Georgia Debt Adjustment Act ("GDAA"), codified at O.C.G.A. § 18-5-1 *et seq*. On July 23, 2012, Plaintiff initiated this lawsuit in the Superior Court of Richmond County, Georgia. Plaintiff and the Proposed Class Members[1] allege the following claims: (1) violations of the Georgia Debt Adjustment Act, (2) fraud, and (3) breach of fiduciary duty. Defendants Nationwide Support Services and Joanne Garneau subsequently filed a notice of removal on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Presently pending before the

---

[1] For simplicity, the Court will collectively refer to both the individually named Plaintiff (Ralph Killoran) and the Proposed Class Members as "Plaintiff." All claims or facts relating specifically to Plaintiff Killoran will be denoted accordingly.

Court is Plaintiff's motion to remand. (Doc. no. 10.) Upon due consideration, and for the reasons stated below, the motion is **GRANTED**.

## I. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and have the power to decide only certain types of cases. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1260-61 (11th Cir. 2000). Article III of the Constitution sets the outer boundaries of that power, and it also vests Congress with the discretion to determine whether, and to what extent, that power may be exercised by lower federal courts. Morrison, 228 F.3d at 1261. Thus, a district court is empowered only to hear those cases for which there has been a Congressional grant of jurisdiction. Id.

The removal of civil actions is governed by 28 U.S.C. § 1441, which allows any defendant to remove a state court action to federal court if the federal court would have original jurisdiction over the matter. District courts have original jurisdiction over all civil actions in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). Additionally, under the Class Action Fairness Act of 2005 ("CAFA"), district courts possess original jurisdiction over any civil class action lawsuit in which the

2

amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2).

"On a motion to remand, the removing party bears the burden of establishing jurisdiction." Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). "[R]emoval from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Id. at 754. However, removal statutes are construed narrowly; where Plaintiff and Defendants clash about jurisdiction, uncertainties are resolved in favor of remand. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## II. DISCUSSION

Plaintiff's complaint seeks damages under the GDAA. The GDAA, codified at O.C.G.A. § 18-5-1 et seq., provides in pertinent part:

> In the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides

3

> in [Georgia], either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor . . . .

O.C.G.A. § 18-5-2. The monetary penalty for the violation of O.C.G.A. § 18-5-2 is "an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00." O.C.G.A. § 18-5-4.

Plaintiff Killoran alleges that he "was contacted by Defendants through a standard marketing scheme employed by Defendants to target consumers in the State of Georgia with personal financial troubles." (Compl. ¶ 20.) According to Killoran, "Defendants represented that they would analyze Plaintiff's financial situation, negotiate with Plaintiff's creditors to lower his interest rates and principal amount owed, and resolve his debts for 40 to 60 cents on the dollar." (Id. ¶ 21.) Killoran contends that his personal debt obligations, at the time of the alleged violation, totaled over $10,000. He then avers that Defendants (or their agents) charged and accepted approximately $12,488.52 from his bank account. Killoran alleges that at least $3,840.24 of the money withdrawn from his account, and received by Defendants, was retained as their fee for the proposed service. Ultimately, he alleges that the money accepted by Defendants exceeded the lawful 7.5 percent threshold established by Georgia law.

4

**A. CAFA**

Plaintiff's motion to remand first argues that Defendants failed to carry their burden under CAFA to establish the minimum amount in controversy as required by § 1332(d). CAFA's requirement of minimal diversity of citizenship is not at issue because Plaintiff is a citizen of Georgia[2] and the defendants are citizens of California.[3] Plaintiff's complaint specifically seeks "a total amount of damages to the Plaintiff and Plaintiff Class Members of less than $5,000,000." (Compl. at 12.) A plaintiff is ordinarily deemed to be the "master of his complaint," and, as such, a plaintiff is entitled to structure the action in a way that avoids federal jurisdiction. See Hill v. Bellsouth Telecomms., Inc., 364 F.3d 1308, 1314 (11th Cir. 2004) ("Thus, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available."); Johnson v. Advance Am., 549 F.3d 932, 937 (6th Cir. 2008) (the plaintiffs, as masters of their complaint, were entitled to restrict their proposed class definition to include only citizens of one state to avoid minimal diversity). Defendants have failed to provide any evidence, or even argue that the amount in controversy for

---

[2] The proposed class of Plaintiffs for whose benefit Plaintiff Killoran brings this action is defined in the complaint as: "All persons who, while residing in the State of Georgia, received Debt Settlement and/or Debt Adjusting services from Century Debt Consolidation and/or Nationwide Support Services, Inc. after July 1, 2003, and from whom the Defendants accepted, either directly or indirectly, any charge, fee, contribution, or combination thereof." (Compl. ¶ 28.)

[3] Defendants Nationwide Support Services and Joanne Garneau's answer admits Plaintiff's allegation that Defendant Nationwide Support Services is a California company.

this class action exceeds the $5,000,000 CAFA threshold. Thus, CAFA's amount in controversy requirement is not met in this case.

### B. Supplemental Jurisdiction

Despite this Court's inability to exercise subject matter jurisdiction over Plaintiff's claims through the vehicle provided by CAFA, the Court could still have subject matter jurisdiction based upon supplemental jurisdiction. See 28 U.S.C. § 1367(a). When at least one named plaintiff satisfies the amount in controversy requirement (and the other jurisdictional elements are present), a district court may exercise supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those other plaintiffs' claims are for less than the jurisdictional minimum for diversity jurisdiction. Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549, 566-67 (2005) ("When the well-pleaded complaint in district court includes multiple claims, all part of the same case or controversy, and some, but not all, of the claims are within the court's original jurisdiction, does the court have before it 'any civil action of which the district courts have original jurisdiction'? It does. . . . It follows from this conclusion that the threshold requirement of § 1367(a) is satisfied in cases, like those now before us, where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy."). In other words, as long as one claim in

6

Plaintiff's well-pleaded complaint meets the test for original jurisdiction, the district court has supplemental jurisdiction, subject to certain exemptions, over all other claims that form part of the same case or controversy. Id. at 559.

Here, Defendants contend that the amount in controversy easily exceeds the requisite $75,000 amount for Plaintiff Killoran due to his prayer for punitive damages relating to his fraud claim. According to Defendants, Killoran alleged $8,840.24 in GDAA damages: $3,840.24 in compensatory damages plus the additional statutory damages of $5,000. Defendants urge the Court to include punitive damages in the amount in controversy calculation for Killoran, which, if over $66,159.76, would meet the $75,000 threshold.

It is undoubtedly true that punitive damages are included in the calculation of the amount in controversy. See Morrison, 228 F.3d at 1271 ("If there is an individual class member whose claim for compensatory damages, combined with a *pro rata* share of attorney's fees and the potential claim for punitive damages, exceeds $75,000, then diversity jurisdiction exists . . . ."). The argument thus boils down to the proper allocation of the punitive damage prayer among the proposed class. Plaintiff contends that a class punitive damages claim must be allocated *pro rata* to each class member. On the other hand, Defendants argue that "such a *pro rata* share must be allocated among named class members . . . ." (Doc. no. 11, at 5.) It follows,

7

according to Defendants, that since Killoran is the only named plaintiff in the case, his *pro rata* share is 100%.

Defendants fail to cite any case law to support their contention however. Defendants cite to <u>Lutz v. Protective Life Ins. Co.</u>, 328 F. Supp. 2d 1350 (S.D. Fla. 2004), among other cases, to show that "the claims of unnamed class members are not considered when calculating the amount in controversy . . . ." (Doc. no. 11, at 6.) However, the cases upon which Defendants rely are inapposite. For instance, <u>Lutz</u> merely demonstrates that § 1367(a) does not permit supplemental jurisdiction over a class action in which unnamed class members meet the amount in controversy requirement, but the named plaintiff does not. This is not at issue in this case.

Conversely, Eleventh Circuit case law clearly indicates that the proper allocation for punitive damages in class actions is a *pro rata* allocation among the entire class of plaintiffs, whether the size of the class is known or unknown, and whether the plaintiffs are named or unnamed. <u>Leonard v. Enter. Rent a Car</u>, 279 F.3d 967, 973 (11th Cir. 2002) (punitive damages may not be aggregated; punitive awards must be equally divided among class members, even though the size of the class and the amount of damages sought by the class are undefined, to determine the amount in controversy); <u>see</u> <u>Morrison</u>, 228 F.3d at 1264-65 (punitive damages must be equally divided among all of the class members); <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069, 1074 (11th

Cir. 2000) (punitive damages must be allocated *pro rata* to each class member).

The Court then turns to the amount of punitive damages to allocate *pro rata* among the entire class of plaintiffs. Certainly if the potential punitive damage claim is large enough, even after being allocated evenly across the class, it could push Plaintiff Killoran's claim above the $75,000 threshold. On this issue, Defendants contend that Plaintiff's punitive damage could result in an award anywhere from $250,000 to $650,000.[4] Even if Defendants were correct, they still fail to meet their burden to show that Killoran's claim exceeds the $75,000 threshold. Here, according to Plaintiff's complaint, "the Defendants have provided Debt Adjusting services to over sixty residents of the State of Georgia since July 1, 2003." (Compl. ¶ 34.) Dividing Defendants' highest appraisal for punitive damages ($650,000) by the estimated minimum figure for the proposed class (60 members) yields the highest potential amount in controversy. That calculation is equal to $10,833.33. The addition of the punitive damages claim above, the "fee" damages of $3,840.24, and the permitted $5,000 in statutory damages results in Killoran's potential maximum award of $19,673.57. Thus, even at its largest possible total, Killoran's amount in controversy is well-below $75,000. As

---

[4] The Court need not address the appropriate maximum award for punitive damages here because the highest figure offered by Defendants still fails to provide the requisite amount in controversy for this Court to have subject matter jurisdiction.

9

such, this Court does not have subject matter jurisdiction over Plaintiff's claims.

### C. Attorney Fees

Plaintiff argues that an award of attorney fees is appropriate in this case. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A district court has discretion to award attorney fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Here, it is clear that Defendants lacked an objectively reasonable basis for removing the case.

In Rae v. Perry, 392 Fed. Appx. 753 (11th Cir. 2010), the court was presented with a factually similar situation. Rae involved a complaint, together with its supporting documentation, seeking a total of $20,000 in compensatory damages on all of its counts. In affirming the district court's judgment against the defendant for the plaintiff's reasonable attorney fees under 28 U.S.C. § 1447(c), the court noted that the defendant failed to present evidence showing, by a preponderance of the evidence, that the compensatory and unspecified damages in the complaint (including punitive damages) met the jurisdictional amount. Importantly, the court concluded that the defendant's calculations were based on his own speculation and were therefore not objectively reasonable.

10

Likewise, this case involves an amount in controversy issue based on Plaintiff's claim for compensatory damages (that is well-below the jurisdictional threshold) and unspecified punitive damages. Defendants asked this Court to apply the constitutionally-permissible limits of punitive damages to determine Killoran's amount in controversy. Even though Georgia law provides a general $250,000 cap on punitive damages, O.C.G.A. § 51-12-5.1(b), the Court accepted Defendants' highest proposed figure of $650,000, exclusively to show that the threshold amount in controversy would still not be satisfied. For Defendants' notice of removal to have any merit, the Court would have to allow punitive damages in an amount grossly in excess of the Georgia cap and almost certainly beyond Constitutional limitation. Moreover, Eleventh Circuit precedent clearly specifies that punitive damages are allocated *pro rata* among the entire class of plaintiffs. After consideration of the entirety of Defendants' argument for subject matter jurisdiction, the Court concludes that Defendants were not objectively reasonable in their amount in controversy calculation. See Rae, 392 Fed. Appx. at 756.

### III. CONCLUSION

As noted above, Defendants bear the burden of establishing jurisdiction. Diaz, 85 F.3d at 1505. Specifically, Defendants are required to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional

requirement.  <u>Pretka</u>, 608 F.3d at 752.  Because Defendants have failed to meet their burden, Plaintiff's motion (doc. no. 10) is **GRANTED**.  Plaintiff is instructed to file a fee petition within fourteen (14) days of the date of this Order.  The Clerk is **DIRECTED** to remand the case to the Superior Court of Richmond County, Georgia.

**ORDER ENTERED** at Augusta, Georgia, this ___14th___ day of January, 2013.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA